# EXHIBIT 2

## THE ARBITRATION TRIBUNALS OF THE
## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| In the matter of the Arbitration between | ) |
| | ) |
| BANKERS CONSECO LIFE INSURANCE | ) **Case No. 01-16-0004-2510** |
| COMPANY and WASHINGTON | ) |
| NATIONAL INSURANCE COMPANY, | ) |
| | ) |
| Claimants/Counterclaim- | ) **ARBITRATION SUMMONS TO** |
| Respondents, | ) **TESTIFY AND PRESENT** |
| | ) **DOCUMENTARY EVIDENCE AT AN** |
| v. | ) **ARBITRATION HEARING** |
| | ) |
| BEECHWOOD RE LIMITED, | ) |
| | ) |
| Respondent/Counterclaimant. | ) |

TO:   Randall Katzenstein
      1865 Palmer Avenue, Suite 208
      Larchmont, NY 10538

By the authority conferred on the Arbitration Panel by Section 7 of the United States Arbitration Act (9 U.S.C. § 7), you are hereby SUMMONED to attend as a witness at an arbitration hearing before one or more of the undersigned arbitrators, to be held on October 15, 2018 at 3 p.m., at Proskauer Rose LLP, Eleven Times Square, New York NY 10036, and to bring with you to the hearing the documents identified in **Schedule A** annexed to this SUMMONS.

Provided that the SUMMONS has been served upon you in the same manner as is required of a judicial subpoena under Rule 45 of the Federal Rules of Civil Procedure, then if you shall refuse or neglect to obey this SUMMONS, upon petition to the United States District Court for the Southern District of New York or a competent court of the State of New York may compel your attendance or punish you for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

You may address questions concerning this SUMMONS to the attorneys identified below. Any application by you to quash or modify this SUMMONS in whole or in part should be addressed to the arbitral tribunal in writing, with copies to counsel for the parties, except that a motion upon the ground that the SUMMONS is unenforceable under Section 7 of the United States Arbitration Act may also be addressed to the United States District Court for the Southern District of New York or a competent court of the State of New York.

Signed: _Debra J. Hall_

On behalf of a unanimous Panel:
Debra J. Hall, Chair
Susan S. Claflin
Caleb Fowler
Arbitrators

- 1 -

Requested by:

Adam J. Kaiser
John M. Aerni
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
adam.kaiser@alston.com
john.aerni@alston.com

Joseph L. Buckley
Richard H. Epstein
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
jbuckley@sillscummis.com
repstein@sillscummis.com

Attorneys for Claimants

Dated:  August 24, 2018

# Federal Rule of Civil Procedure 45 (d) and (e)

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

- 1 -

## SCHEDULE A

## DEFINITIONS

1.      The terms "Affiliate" or "Affiliates" mean any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the first person or entity specified.  When the term "Affiliate" is used in these discovery demands, it includes, in the case of an entity, not only the entity but also that entity's present and former agents, employees, representatives, investigators, attorneys, and/or any individuals acting on that entity's behalf.

2.      The term "Beechwood" refers to Beechwood Re Limited and any of its Affiliates, including but not limited to, BAM Administrative Services LLC, BAM Management Services LLC, B Asset Holdings LLC, B Asset Manager GP LLC, B Asset Manager LP, B Asset Manager II GP LLC, B Asset Manager II LP, Beechwood Asset Management Trust II, Beechwood Capital Group LLC, Beechwood Global Distribution Trust, Beechwood Global Distributors LLC, Beechwood Bermuda Ltd., Beechwood Bermuda International Ltd., Beechwood Bermuda International (Middle East) Ltd., Beechwood Bermuda Investment Holdings Ltd., Beechwood Re Holdings Inc., Beechwood Re Investments LLC, Beechwood Re Investors LLC, Beechwood Re Ltd., B Investments LLC, BRK Holdings GP Ltd., BRK Holdings Ltd., Old Mutual (Bermuda) Ltd. a/k/a Beechwood Omnia Ltd., FTL Holdings LLC, N Management LLC, MF Energy Holdings LLC, MSD Administrative Services LLC, Shoreline Gold Inc., Tevere Capital LP, Tevere Capital Management LLC, Tevere Holdings LLC and Tevere Management LP.

3.      The term "Claimants" means Bankers Conseco Life Insurance Company and/or Washington National Insurance Company and any of their Affiliates.

4.      The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

- 1 -

5.     The term "concerning" means concerning, referring to, relating to, describing, evidencing, identifying, or constituting.

6.     The term "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term.

7.     The term "Investment" includes, but is not limited to, a transaction involving the exchange of money, securities, equity, and/or debt, on the one hand, for other money, securities, equity, and/or debt, on the other hand.

8.     The term "Obex" means "Obex Group LLC."

9.     The term "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10.     The term "Platinum" refers to Platinum Partners, L.P. and any of its Affiliates, including but not limited to Platinum Credit Management, L.P., Platinum Partners Credit Opportunities Master Fund L.P., Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunity Fund (BL) LLC, Platinum Partners Credit Opportunities Fund International Ltd, Platinum Partners Credit Opportunities Fund International (A) Ltd, Platinum Credit Management LLC, Platinum Credit Holdings LLC, Platinum Liquid Opportunity Management (NY) LLC, Platinum Partners Liquid Opportunity Fund (USA) L.P., Platinum Liquid Opportunity GP LLC, Platinum Partners Liquid Opportunity Fund (International) Ltd., Platinum Partners Liquid Opportunity Intermediate Fund L.P., Platinum Partners Liquid Opportunity Master Fund L.P., and Platinum Management (NY) LLC.

- 2 -

11.     The term "Reinsurance Agreements" refers to: (1) a certain New York Indemnity Reinsurance Agreement (along with any exhibits, schedules, and other Documents annexed to it) by and between Bankers Conseco Life Insurance Company and Beechwood Re Limited, executed on or around February 10, 2014; and (2) a certain Indemnity Reinsurance Agreement (along with the exhibits, schedules, and other Documents annexed to it) by and between Washington National Insurance Company and Beechwood Re Limited, executed on or around February 10, 2014.

12.     The term "Reinsurance Trusts" means the trusts established under the Reinsurance Agreements and Trust Agreements, including Trusts identified as "BRe WNIC 2013 LTC Primary," "BRe WNIC 2013 LTC Sub," "BRe BCLIC Primary," and "BRe BCLIC Sub."

13.     The term "Trust Agreements" means the trust agreements annexed to the Reinsurance Agreements.

14.     The term "Wilmington Trust" or "Trustee" means Wilmington Trust, National Association and any of its Affiliates.

15.     The terms "You" and "Your" refer to Randall Katzenstein.

## INSTRUCTIONS

1.     In this Summons, including the Documents to be produced and the definitions and instructions, the use of the singular form of a word includes the plural and vice versa.  The use of the word "any" should be construed to also mean "all" and vice versa.

2.     This Summons calls for the production of all Documents and Communications in Your possession, custody or control.  This includes, but is not limited to, all Documents subject to Your control that are stored in physical locations, or on any electronic device or computer, including, but not limited to, servers, hard drives, thumb drives, and similar devices, laptops,

- 3 -

tablets, or smartphones, and includes any Documents and Communications stored with cloud technology which is in Your possession, custody, or control.

3.     If You object, in whole or in part, to any category of Documents to be produced (or any definition or instruction) in this Summons and do not produce all responsive Documents, (a) state with specificity all grounds for, and the facts upon which You base, each such objection and/or refusal to produce, and (b) identify and produce those Documents requested to which You do not object.

4.     Please produce responsive Documents to the extent that You do not claim a privilege. If You object to any Documents requested on grounds of privilege, please fully set forth Your claim of privilege in response to this Summons. For any responsive Documents withheld, please provide at the date and time set forth in this Summons a summary conforming to the requirements of Fed. R. Civ. P. 45(e)(2) that describes the nature of each of the Documents, Communications or other tangible things not produced or disclosed.

5.     You do not need to produce again at the hearing a copy of any documents previously produced by You in this arbitration proceeding.

6.     Unless otherwise specified, these requests seek Documents for the period November 1, 2013 through December 31, 2016.

## DOCUMENTS TO BE PRODUCED

1.     All Documents and Communications concerning Beechwood, including but not limited to (a) any proposed or actual agreements with Beechwood, including negotiations concerning any actual or proposed agreements with Beechwood, (b) statements concerning the Reinsurance Trusts or any assets or Investments in the Reinsurance Trusts, (c) Documents concerning any proposed or actual letter of credit or any effort or attempt by Beechwood or

- 4 -

Platinum to use the Reinsurance Trusts or any assets or Investments in them to borrow money, and/or any financial statements, business plans, business projections or audits concerning Beechwood, (d) any Documents You provided to Beechwood or Platinum, or (e) any Know Your Customer or due diligence Documents concerning Beechwood.

2.      All Documents and Communications concerning any of the following individuals employed by or associated with Beechwood or Platinum:

        a.      Mark Nordlicht;

        b.      Murray Huberfeld;

        c.      David Bodner;

        d.      Moshe (Mark) Feuer;

        e.      Scott Taylor;

        f.      Samuel Adler;

        g.      Ezra Beren;

        h.      Moti Edelstein;

        i.      Elliot Feit;

        j.      Rick Hodgdon;

        k.      Naftoli Jacobs;

        l.      Randall Katzenstein;

        m.      Stewart Kim;

        n.      David Leff;

        o.      David Levy;

        p.      Naftali Manela;

        q.      Dhruv Narain;

r.      Alexis Northwood;

s.      David Ottensoser;

t.      Paul Poteat;

u.      Eli Rakower;

v.      Danny Saks;

w.      Sam Salfati;

x.      Will Slota;

y.      Daniel Small;

z.      David Steinberg;

aa.     Christian Thomas;

bb.     Rob Walford; or

cc.     Naveed Ameen.

3.      All Documents and Communications concerning the Reinsurance Agreements, Trust Agreements, Reinsurance Trusts or any asset or Investment of the Reinsurance Trusts, including but not limited to (a) any acquisition, deposit, valuation, rating, management, withdrawal, transfer, or disposition of any asset or Investment in the Reinsurance Trusts, (b) the actual or potential leveraging of the Reinsurance Trusts or any asset or Investment in the Reinsurance Trusts, including without limitation any actual or potential attempt or effort to borrow against the Reinsurance Trusts or any asset or Investment of them or use them as collateral or security for a loan, letter of credit or other form of credit, (c) any Investment of any asset in the Reinsurance Trusts with Platinum or any Person in which Platinum has or had any ownership interest or Investment, or (d) or any services performed concerning the Reinsurance

- 6 -

Agreements, Trust Agreements, Reinsurance Trusts or any asset or Investment of the Reinsurance Trusts by Obex, You or Wilmington Trust.

4.      All Documents and Communications concerning an actual or proposed Amended and Restated Limited Liability Company Agreement of Obex Group LLC.

5.      Any Documents and Communications concerning any subpoena from or inquiry, investigation, examination, action or audit of any government agency, regulator or entity, including but not limited to (a) the United States Securities and Exchange Commission, (b) the United States Department of Justice, (c) the New York State Department of Financial Services, (d) the Indiana Department of Insurance, (e) the Cayman Islands Monetary Authority, or (f) the Bermuda Monetary Authority, concerning Beechwood or Platinum, including but not limited to any Documents or Communications You or Obex made available to, and any agreement including search terms You or Obex made or negotiated with, any government agency, regulatory or entity.

6.      Concerning the Reinsurance Trusts or the Investment of any assets in the Reinsurance Trusts, all Documents and Communications concerning any attempt by Beechwood or Platinum to leverage assets or establish a letter of credit or prime brokerage relationship with any Person, including but not limited to Cantor Fitzgerald, Goldman Sachs, BNP Paribas, Credit Suisse, Maple Bank, Nomura, Barclays, Scotia Bank or Morgan Stanley.

7.      All Documents and Communications concerning Platinum.

8.      All Documents and Communications concerning Exhibit 1 (attached CANTOR 0001), including but not limited to all Documents and Communications concerning the information You included in Exhibit 1 and/or how You obtained or learned the information included in Exhibit 1.

- 7 -

EXHIBIT 1

| | |
|---|---|
| **From:** | Randy Katzenstein [randy@obexgroup.com] |
| **Sent:** | 11/27/2013 8:15:39 PM |
| **To:** | Sherry, Robert [rsherry@cantor.com] |
| **Subject:** | discussion regarding Plaitnum introduced opportunity |

Hi Bob;

The management of Platinum has been engaged to manage four Grantor Trusts totaling $580MM. The custodian is Wilmington Trust. The domicile of the funds will be US. This is just the beginnings of the assets which are already fully in place.

Potentially, Cantor could become one of their prime brokers and compete for repo and equity finance and execution business. Currently, the assets are 90% fixed income and 10% cash. There will be some reallocation to equities but the far majority will remain in fixed. Three PMs will handle the trading.

It is important to note that the Trusts will be managed by Platinum related persons, but not have any legal relationship to the various Platinum funds.

I am happy to set up a call between us and Will Slota the COO of Platinum. I have also spoken with the founder of Platinum, Mark Nordlicht about this opportunity and he is the one who is recommending this happen. We can also head over there for a meeting if you prefer at the Carnegie Towers on 57th street. Last week, Wayne Buchan, Jeff Marcus, Charles Knott and I visited with Platinum's head of risk, their President, Will Slota, and operations personnel.

Please let me know when you are available and suggest some dates/times.

Have a great holiday!

Randy

Randy Katzenstein
President & CEO
OBEX Group LLC

Tel:   914-833-1800
Fax:   914-833-8903
randy@obexgroup.com



CF-BCLIC000001