UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

WASHINGTON NATIONAL INSURANCE
COMPANY,

               Petitioner,

    -against-

OBEX GROUP LLC and RANDALL
KATZENSTEIN,

             Respondents.

------------------------------------- X

:
:
:
:
:
:
:
::

Civil Action No.  7:18-cv-09693-VB

Document Filed Electronically

---

**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

Joseph L. Buckley
Richard H. Epstein
Matthew L. Lippert
SILLS CUMMIS & GROSS P.C.
(212) 643-7000
*Attorneys for Petitioner Washington
National Insurance Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

COUNTERSTATEMENT OF FACTS ...................................................................... 3

A.    THE ARBITRATION.................................................................................... 3

B.    THE ARBITRATION SUMMONSES ISSUED TO OBEX AND
      KATZENSTEIN ............................................................................................ 4

C.    OBEX AND KATZENSTEIN FAILED TO COMPLY WITH THE
      ARBITRATION SUMMONSES.................................................................... 4

D.    THE ORDER AFFIRMING THAT THE ARBITRATION SUMMONSES
      SHOULD BE ENFORCED ........................................................................... 5

E.    RESPONDENTS FAILURE TO SEARCH FOR OR PRODUCE "PLATINUM"
      DOCUMENTS............................................................................................... 5

LEGAL STANDARD............................................................................................... 7

ARGUMENT ........................................................................................................... 8

        I.    THE PARTIES TO THIS PROCEEDING ARE CITIZENS OF
            DIFFERENT STATES, AND THERE IS NO REQUIREMENT
            TO LOOK TO THE CITIZENSHIP OF ALL PARTIES TO THE
            UNDERLYING ARBITRATION. .......................................................... 8

        II.   THE AMOUNT IN CONTROVERSY REQUIREMENT IS
            SATISFIED.......................................................................................... 10

CONCLUSION...................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cianflone*,
2014 U.S. Dist. LEXIS 167919 (N.D.N.Y. Dec. 4, 2014) ........................................9

*Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*,
744 F. Supp. 450 (S.D.N.Y. 1990) ........................................................................10

*Federal Insurance Co. v. Law Offices of Edward T. Joyce, P.C.*,
2008 U.S. Dist. LEXIS 20713 (N.D. Ill. Mar. 13, 2008) ........................................10

*Karsner v. Lothian*,
532 F.3d 872 (D.C. Cir. 2008) ..............................................................................10

*Scherer v. Equitable Life Assur. Soc'y of the U.S.*,
347 F.3d 394 (2d Cir. 2003).............................................................................7, 11

*Seaton Insurance Co. v. Cavell USA*,
2007 U.S. Dist. LEXIS 104589 (D. Conn. Mar. 21, 2007)......................................10

*Shasha v. Malkin*,
2018 U.S. Dist. LEXIS 112230 (S.D.N.Y. July 5, 2018) ........................................12

*Smith v. Morgan Asset Mgmt.*,
2009 U.S. Dist. LEXIS 138411 (N.D. Ga. Oct. 6, 2009).........................................9

*Soley v. Wasserman*,
2011 U.S. Dist. LEXIS 109470 (S.D.N.Y. Aug. 11, 2011) .............................7, 11

*Stolt-Nielsen Transp. Group, Inc. v. Celanese AG*,
430 F.3d 567 (2d Cir. 2005)...................................................................................8

*Tongkook Am., Inc. v. Shipton Sportswear Co.*,
14 F.3d 781 (2d Cir. 1994)..............................................................................7, 11

*Vaden v. Discover Bank*,
556 U.S. 49 (2009)...........................................................................................8, 9

**Statutes**

28 U.S.C. § 1332(a) ................................................................................................7

28 U.S.C. § 1333(1) ................................................................................................8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Federal Arbitration Act ................................................................................................. *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .................................................................... 9

Federal Rule of Civil Procedure Rule 12(b)(7) ........................................................... 9

Federal Rule of Civil Procedure Rule 19 ..................................................................... 10

## PRELIMINARY STATEMENT

This is a simple petition to enforce arbitration summonses issued pursuant to the Federal Arbitration Act (the "FAA") by an arbitration panel (the "Panel") sitting in New York. The Panel has already determined that the information sought from Respondents Obex Group LLC ("Obex") and Randall Katzenstein ("Katzenstein") (collectively, "Respondents") is relevant. (Declaration of Richard Epstein ("Epstein Decl.") ¶ 11 & Ex. 4.) Nevertheless, Respondents continue their game of trying to "run out the clock" in order to avoid having to provide this relevant information. As set forth below, Respondents' latest gambit—asserting that this Court lacks jurisdiction to compel enforcement of the summonses—is without merit.

The underlying arbitration concerns, among other things, a massive fraud scheme concocted by Platinum Partners and its affiliates ("Platinum"). In 2013, Petitioner and one its affiliates sought to reinsure certain blocks of long-term care business, and ultimately entered into reinsurance agreements with the reinsurer Beechwood Re Ltd. ("Beechwood Re"). As has been now confirmed by indictments, civil actions by the Securities and Exchange Commission ("SEC") and multiple press reports, Beechwood Re was not the upstanding organization that it claimed to be. It was owned and controlled by fraudsters such as Mark Nordlicht and Murray Huberfeld,[1] and its purpose was not to serve as a legitimate reinsurer, but rather, to unlawfully siphon off money from insurance companies as part of a Ponzi scheme. As a result of this fraud, WNIC and its affiliate have suffered at least $134 million in damages.

---

[1]   Platinum and its principals are the subjects of governmental investigations and criminal proceedings, including *U.S. v. Seabrook and Huberfeld*, 16-CR-467 (S.D.N.Y.), *U.S.. v. Nordlicht, et al.*, 16-CR-640 (E.D.N.Y.), and *SEC v. Platinum Management (NY) LLC, et al.*, 16-CV-6848 (E.D.N.Y.). They are also subjects of additional private litigation (beyond the Arbitration) detailing their egregious misconduct with respect to Beechwood Re. *E.g.*, *Martin Trott and Christopher Smith, as Joint Official Liquidators and Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) and Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) v. Platinum Management (NY) LLC, et al.*, 1:18-cv-10936 (S.D.N.Y.).

The extent to which Platinum covertly controlled Beechwood Re—and Platinum's nefarious attempts to leverage assets ceded to Beechwood Re as part of the reinsurance agreements—are subjects of the underlying arbitration.  Respondents, as broker for Platinum, possess relevant information but have refused to search for or produce anything using the term "Platinum."  Rather than appear at the hearing set forth in the arbitration summonses, Respondents defaulted, thus forcing Petitioner to commence this proceeding.  And now, rather than simply producing their "Platinum" documents, Respondents speciously contend that this Court cannot enforce the summonses.

First, Respondents contend that this Court lacks jurisdiction because there is no diversity between the parties.  There is.  WNIC is an Indiana resident, and Respondents are New York residents.  Respondents then make up law, claiming that diversity should be tested not by the parties to this petition, but rather by all parties to the underlying arbitration.  As set forth at pp. 8 to 10, there is no legal basis for Respondents' position.

Second, Respondents argue that there is no jurisdiction because the petition to enforce does not seek more than $75,000 in relief.  This is silly.  As a matter of law, the equitable relief sought herein suffices to meet the requirements of diversity jurisdiction.  *See* pp. 10 to 11 and cases cited therein.  In addition, the underlying arbitration seeks far in excess of $75,000 in damages.  If Respondents were correct—which they are not—then there would hardly ever be a case when a federal court could enforce an arbitration summons, since the petition to compel itself does not seek monetary damages.  That is not the law, as shown by the numerous cases where federal courts have enforced arbitration summonses.  *See* pp. 10-11 and cases cited therein.

The final arbitration hearing is scheduled to commence on March 11, 2019.  The arbitration summons will be for naught—and Respondents' gamesmanship to run out the clock will have prevailed—unless Respondents' baseless arguments are rejected and this Court promptly orders compliance with the arbitration summonses.  Accordingly, Petitioner respectfully requests both that this Court deny the pending motion to dismiss and instead issue an Order requiring compliance with the arbitration summonses no later than January 8, 2018.

## COUNTERSTATEMENT OF FACTS

### A.  The Arbitration

Petitioner and its affiliate Bankers Conseco Life insurance Co. ("BCLIC") are currently engaged in an arbitration against Beechwood Re, its affiliate Beechwood Capital Group, LLC, and certain individuals.  This arbitration is styled *Bankers Conseco Life insurance Co. & Washington National Insurance Co. v. Beechwood Re, Ltd., et al.*, AAA Case No. 01-16-0004-2510 (the "Arbitration").  (Epstein Decl. ¶ 2.)  In the Arbitration, Petitioner alleges, among other things, that it was fraudulently induced to enter into a reinsurance agreement with Beechwood Re.[2]  This fraud included concealing the extent of Beechwood Re's connections—through both common personnel and economic control—to a hedge fund known as Platinum Partners ("Platinum"), which used Beechwood Re to support its Ponzi-like scheme and to invest in other companies in which Platinum had interests, in violation of Beechwood Re's duties to Petitioner.  (Epstein Decl. ¶ 3.).  The Claimants in the arbitration seeks in excess of $100 million in damages.  (Epstein Decl. ¶ 2).

---

[2]      Respondents err when they claim that BCLIC is "a party to the reinsurance agreement at issue in the arbitration."  (Moving Br. at 6.)  WNIC and BCLIC were each parties to separate reinsurance agreements with Beechwood Re.  (*See*, *e.g.*, Kim Decl. Ex. B at ¶¶ 12, 17.)

### B.  The Arbitration Summonses Issued To Obex and Katzenstein

Obex has admitted, through its counsel, that it is in possession of materials responsive to arbitration summonses served upon it.  (Epstein Decl. ¶ 4; Epstein Decl. Ex. 3.)  Mr. Katzenstein is the president and chief executive officer of Obex.  (Kim Decl. ¶ 2.)

On August 24, 2018, the three-member Panel executed and issued two arbitration summonses.  These summonses required the appearance of Randall Katzenstein—both on behalf of Obex and individually—at an "arbitration hearing, to be held before one or more of the undersigned arbitrators, to be held on October 15, 2018 at 3 p.m., at Proskauer Rose LLP, Eleven Times Square, New York NY 10036."  The summonses each further required that Mr. Katzenstein bring with him "the documents identified in Schedule A annexed to this SUMMONS."  (Epstein Decl. ¶ 6; Epstein Decl. Exs. 1-2.)  On September 10, 2018, Helen Kim, Esq., an attorney at Thompson Coburn LLP, agreed to accept service of the summonses on behalf of Obex and Mr. Katzenstein.  (Epstein Decl. ¶ 7; Epstein Decl. Ex. 3.)

### C.  Obex and Katzenstein Failed To Comply With The Arbitration Summonses

On October 15, 2018, the Panel convened a hearing at the offices of Proskauer Rose LLP, at Eleven Times Square, New York NY 10036, just as the summonses stated.  The purpose of this hearing was to take Respondents' testimony and obtain their documentary evidence, in accordance with the summonses served on them.  The Panel was also prepared to rule on any evidentiary objections relating to this testimony and documentary evidence.  (Epstein Decl. ¶ 15.)  But neither Katzenstein, nor any other representative of Obex, appeared at the October 15 hearing.  (Epstein Decl. ¶¶ 17-18.)

4

### D.  The Order Affirming That The Arbitration Summonses Should Be Enforced

As a result of Respondents' failure to comply with the arbitration summonses and appear at the scheduled hearing in New York, the Panel issued an order addressing Respondents' failure to comply with the arbitration summonses.  That order (a) found that the "documents and information sought by the Arbitration Summonses are relevant to the issues raised in the Amended Arbitration Demand," (b) "unanimously affirm[ed] that the Arbitration Summonses should be enforced by a Court of appropriate jurisdiction," and (c) granted "leave to pursue judicial intervention to obtain compliance [with the arbitration summonses] from Obex Group LLC and Randall Katzenstein[.]"  (Epstein Decl. Ex. 4.)

The Panel has scheduled the final hearing on the merits for March 11, 2019.  (Epstein Decl. ¶ 20.).

### E.  Respondents Failure To Search For Or Produce "Platinum" Documents

Petitioner had previously served subpoenas on Obex and Katzenstein, and they produced some documents in response.  However, Obex and Katzenstein refused to run any searches for email or other electronically stored information using any term such as "Platinum."  Because of this, Obex and Katzenstein failed to produce crucial documents relevant to the Arbitration. (Epstein Decl. ¶ 8.)

Respondents' claim that "neither OBEX nor Randall Katzenstein has ever engaged in any business with Beechwood or its affiliates" (Kim Decl. ¶ 3; *see also* Moving Br. at 2) is, at best, grossly misleading and in any event ignores the request for documents and testimony concerning Platinum.  It is abundantly clear that Obex and Katzenstein in fact worked for Platinum, which (corruptly) controlled Beechwood Re.  Katzenstein has in fact offered to arrange meetings on behalf of Will Slota and Mark Nordlicht, whom he described as "the management of Platinum,"

in connection with "Grantor Trusts totaling $580 [million]," the same trusts that Beechwood Re was supposed to manage for WNIC and BCLIC.  (Exhibit 1 to Epstein Decl. Ex. 1.)  Katzenstein himself wrote that "the Trusts will be managed by Platinum related persons, but not have any legal relationship to the various Platinum funds."  (Exhibit 1 to Epstein Decl. Ex. 1.)  While this last sentence might arguably render the statements in the Obex motion papers literally true, there can be no dispute, given the evidence from Katzenstein's own mouth, that Respondents were involved in Platinum's control of Beechwood Re.  Tellingly, these statements were uncovered not because of anything Respondents have done, but only because another non-party happened to produce the November 27, 2013 e-mail containing these statements.  (Epstein Decl. ¶ 9.)

Respondents have objected to complying with the arbitration summonses on burden grounds, claiming that searching their documents with the search term "Platinum" would yield too many hits, and that they are unable to run searches using multiple terms in conjunction (which would yield fewer hits).  (Epstein Decl. ¶ 12.)  However, Respondents have refused to provide a report showing how many hits the search term "Platinum" actually yields. Respondents have also declined **three separate proposals** to alleviate any burden by either (a) having WNIC hire an e-discovery vendor to image the documents and review them for relevant material, with an agreement that any privileged material could be clawed back pursuant to Fed. R. Evid. 502(d), all at no cost to Respondents, (b) narrowing the timeframe of the document request to six months (from an original timeframe of thirty-eight months), or (c) having WNIC hire an e-discovery vendor to image the documents, at no cost to Respondents, with Respondents conducting their own review at their own cost.  (Epstein Decl. ¶ 13.)

In any event, Platinum has waived its right to argue burden (or any other issue concerning the scope of the arbitration summonses) by failing to appear at the scheduled hearing.

**LEGAL STANDARD**

Federal district courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).  But a party "need not even demand money damages to satisfy the amount in controversy requirement" because claims for equitable relief are cognizable.  *Soley v. Wasserman*, 2011 U.S. Dist. LEXIS 109470, at *19 (S.D.N.Y. Aug. 11, 2011) (citing *Sills v. Ronald Reagan Presid. Found., Inc.*, 2009 U.S. Dist. LEXIS 44774 (S.D.N.Y. May 27, 2009)).  When equitable relief is sought, "the amount in controversy is measured by the value of the object of the litigation."  *Id.* (internal quotation marks omitted).

A party invoking diversity jurisdiction must show only "that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount."  *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal quotation marks omitted). This burden is "hardly onerous," because there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  *Scherer v. Equitable Life Assur. Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted).  To rebut this presumption, Respondents must show "to a legal certainty" that the amount in controversy does not meet the jurisdictional threshold.  *Id.* (internal quotation marks omitted).  "This 'legal certainty' standard represents a formidable obstacle for the party opposing jurisdiction."  *Soley v. Wasserman*, 2011 U.S. Dist. LEXIS 109470, at *17 (S.D.N.Y. Aug. 11, 2011) (quoting *Scherer*, 347 F.3d at 397).  If "the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook*, 14 F.3d at 785.

## ARGUMENT

**I.     THE PARTIES TO THIS PROCEEDING ARE CITIZENS OF DIFFERENT STATES, AND THERE IS NO REQUIREMENT TO LOOK TO THE CITIZENSHIP OF ALL PARTIES TO THE UNDERLYING ARBITRATION.**

There is no dispute that WNIC is a citizen of Indiana and Respondents are citizens of New York.  This meets the test for diversity.[3]  However, Respondents argue that there is no jurisdiction because WNIC must prove that there would be diversity as to **all parties in the underlying arbitration**.  There is no such rule, and Respondents' attempt to create one rests on a misreading of *Stolt-Nielsen Transp. Group, Inc. v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005).

In *Stolt-Nielsen*, the Court of Appeals for the Second Circuit found that it (and the district court below) had subject matter jurisdiction over a dispute concerning arbitration subpoenas because the district court had maritime jurisdiction over a prior application to stay the arbitration. As the Second Circuit explained, having denied that request and effectively compelled arbitration, the district court "retained subject matter jurisdiction under 28 U.S.C. § 1333(1) over any later applications or petitions arising out of the parties' arbitration, including the motions to compel and quash that form the basis of this appeal."  *Stolt-Nielsen*, 430 F.3d at 573.  In other words, the court's previous jurisdiction over the underlying dispute was a *sufficient* condition to find jurisdiction over the discovery dispute.  Nothing in *Stolt-Nielsen* says that jurisdiction over the underlying dispute is a *necessary* condition to find jurisdiction over a discovery dispute. *Vaden v. Discover Bank*, 556 U.S. 49 (2009), similarly offers no support to Respondents.  In *Vaden*, the Supreme Court held that a court "*may* 'look through' a § 4 petition [to compel

---

[3]     Respondents misstate the record when they assert that WNIC has claimed that the FAA creates subject matter jurisdiction.  (*See* Moving Br. at 3.)  Paragraph 4 of the Petition simply explains that this is an action to enforce an arbitration summons in accordance with Section 7 of the FAA, without ever using the word "jurisdiction."  As the next paragraph explains, the basis of this Court's jurisdiction is the diverse citizenship of the parties.

arbitration] to determine whether it is predicated on an action that 'arises under' federal law[.]" *Id.* at 62 (emphasis supplied). This is a far cry from Respondents' proposed *requirement* that this Court look through a Section 7 petition in order to destroy jurisdiction that exists on the petition's face.

Indeed, when considering Section 7 of the FAA—the section at issue here—another of Respondents' cited authorities, *In re Cianflone*, 2014 U.S. Dist. LEXIS 167919 (N.D.N.Y. Dec. 4, 2014), makes clear that the parties that matter for diversity jurisdiction are the parties to the Section 7 action, not the parties to the underlying arbitration. As that court explained:

> the controversy before the Court is not the dispute forming the basis of the arbitration. Rather, the controversy before the Court is whether the arbitration subpoena should be enforced." *Id.* at *3.

It is irrelevant that courts might, in other contexts, look through to the underlying dispute to assess jurisdiction, and this Court should not conflate the analyses under separate sections of the FAA and separate sources of federal jurisdiction to enforce Respondents' proposed mutant jurisdictional rule.

Even if Respondents' argument were the law—and it is not—it would not change the outcome of this motion. If this Court were to "look through" the Petition as Respondents ask, it would find that while this Court would not have diversity jurisdiction, it would have "arising under" jurisdiction over the underlying dispute, given the RICO claims. *See Smith v. Morgan Asset Mgmt.*, 2009 U.S. Dist. LEXIS 138411, at *7 (N.D. Ga. Oct. 6, 2009) (holding federal question jurisdiction existed over petition pursuant to Section 7 of the FAA where "the arbitration involve[d] *inter alia* federal securities laws and regulations").

Finally, Respondents' use of the term "indispensable party" does not change the analysis. Respondents have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which concerns subject matter jurisdiction. Rule 12(b)(7), never cited in the notice of motion, governs

dismissals for failure to join an indispensable party under Rule 19.  And Respondents have made

no showing that BCLIC's absence prejudices BCLIC, prejudices Respondents, creates any risk

of inconsistent obligations, or otherwise means that "in equity and good conscience," this Court

cannot "proceed in [BCLIC's] absence."  *Ente Nazionale Idrocarburi v. Prudential Sec. Group,*

*Inc.*, 744 F. Supp. 450, 456 (S.D.N.Y. 1990).

## II.     THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED.

Respondents also contend that this Court lacks jurisdiction because there is not at least

$75,000 in controversy in this dispute concerning an arbitration with more than one hundred

million dollars at issue.  This is wrong for two reasons.  First, the amount in controversy in the

underlying arbitration can provide the measure of amount in controversy for a Section 7 petition.

In *Seaton Insurance Co. v. Cavell USA*, 2007 U.S. Dist. LEXIS 104589, at *4 (D. Conn. Mar. 21,

2007), the court found that it had jurisdiction over a Section 7 petition to enforce summonses to

non-parties to the arbitration "because there is complete diversity among the parties and the

amount in controversy exceeds $75,000," when, as in this case, the underlying arbitration was a

dispute between an insurance company and its reinsurer over millions of dollars, but the Section

7 petition (of course) sought no damages.  Similarly, in *Federal Insurance Co. v. Law Offices of*

*Edward T. Joyce*, *P.C.*, 2008 U.S. Dist. LEXIS 20713 (N.D. Ill. Mar. 13, 2008), the court

accepted the amount in controversy of the underlying arbitration as sufficient to confer diversity

jurisdiction over a Section 7 proceeding against a non-party to the arbitration.  *See also Karsner*

*v. Lothian*, 532 F.3d 872, 882-83 (D.C. Cir. 2008) (amount in controversy for motion to

intervene in proceeding to confirm arbitration award is gauged by amount demanded in

arbitration).

Second, a party need not demand any money damages at all to satisfy the amount in

controversy requirement.  *Soley v. Wasserman*, 2011 U.S. Dist. LEXIS 109470, at *19 (S.D.N.Y.

Aug. 11, 2011) (citing *Sills v. Ronald Reagan Presid. Found., Inc.*, 2009 U.S. Dist. LEXIS 44774 (S.D.N.Y. May 27, 2009)).  When equitable relief is sought, "the amount in controversy is measured by the value of the object of the litigation." *Id.* (internal quotation marks omitted). What Petitioner seeks in this action is highly valuable equitable relief—effectively an injunction requiring Respondents to produce evidence it will use to help it recover tens of millions of dollars in damages.  (*See* Kim Decl. Ex. B at ¶ 147 (claimants in arbitration seek at least $134 million in damages); Epstein Decl. ¶ 2 (roughly half the damages in the arbitration are sought on behalf of WNIC alone).)  Respondents must rebut the presumption that this relief is worth at least $75,000 to WNIC, and it is far from a "legal certainty" that it is not. *Scherer v. Equitable Life Assur. Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) (if "the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings").

Furthermore, this Court would hardly be breaking any new jurisdictional ground by enforcing the summonses to Respondents.  Chief Judge Juan R. Sanchez of the United States District Court for the Eastern District of Pennsylvania has enforced a similar arbitration summons issued by the Panel and served on another entity, Egan-Jones Ratings Company, accepting the allegations that diversity existed and that the amount-in-controversy requirement was satisfied.  (*See* Esptein Decl. Ex. 5 (Petition to enforce Egan-Jones summons); Epstein Decl. Ex. 6 (Judge Sanchez's order grating the Egan-Jones Petition).)  On the other hand, mechanically finding a lack of jurisdiction in a Section 7 proceeding for want of a demand for at least $75,000 from the party disobeying a summons would render Section 7 a near nullity and frustrate the orderly administration of the very proceedings the FAA seeks to encourage.  Settled law on

11

jurisdiction and equitable relief, together with the "strong federal policy in favor of arbitration," which courts in the Second Circuit "have often and emphatically applied" support a finding that diversity jurisdiction exists in this action.  *Shasha v. Malkin*, 2018 U.S. Dist. LEXIS 112230, *4 (S.D.N.Y. July 5, 2018).

## **<u>CONCLUSION</u>**

For the forgoing reasons, Petitioner respectfully requests that this Court deny Respondents' motion to dismiss on an expedited basis, issue an order compelling compliance with the arbitration summonses, and grant such other and further relief as this Court deems just and fair.

Dated:  New York, New York
        November 26, 2018

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
Joseph L. Buckley
Richard H. Epstein
Matthew L. Lippert


By: <u>S/ Joseph L. Buckley</u>
    (212) 643-7000
    *Attorneys for Petitioner Washington*
    *National Insurance Company*