UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WASHINGTON NATIONAL INSURANCE
COMPANY,

                Petitioner,

    -against-

OBEX GROUP LLC and RANDALL
KATZENSTEIN,

               Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    :
    :
    :
    :
    :
    :
    :

Civil Action No.  7:18-cv-09693-VB

Document Filed Electronically

---

**PETITIONER'S REPLY IN SUPPORT OF PETITION TO COMPEL COMPLIANCE
WITH ARBITRATION SUMMONSES AND OMNIBUS OPPOSITION TO
RESPONDENTS' MOTIONS FOR RECONSIDERATION AND TO QUASH**

---

Joseph L. Buckley
Richard H. Epstein
Matthew L. Lippert
SILLS CUMMIS & GROSS P.C.
101 Park Avenue 28th Floor
New York, New York 10178
(212) 643-7000
*Attorneys for Petitioner Washington
National Insurance Company*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT……………………………………………………………1

STATEMENT OF FACTS………………………………………………………………3

    A.    The Arbitration……………………………………………………………....3

    B.    Respondents Failed To Search For Or Produce Important Documents In Response to Petitioner's Prior Efforts……………………………………4

    C.    The Arbitration Summonses Issued To Obex and Katzenstein..……………....5

    D.    Obex and Katzenstein Failed To Comply With The Arbitration Summonses.......5

    E.    The Order Affirming That The Arbitration Summonses Should Be Enforced…..6

    F.    Respondents Unsuccessfully Moved To Dismiss The Petition To Enforce The Summonses………………………………………………………………....6

LEGAL ARGUMENT………………………………………………………………...7

    I.    THE PETITION SHOULD BE GRANTED…………………………………....7

    II.    THE MOTION FOR RECONSIDERATION IS UTTERLY MERITLESS…….9

    III.    THE MOTION TO QUASH SHOULD BE DENIED…………………………12

        A.    The Summonses Seek A Personal Appearance And Testimony Before The Arbitration Panel, Not Improper Pre-Hearing Discovery………….12

        B.    Respondents' "Waiver" Arguments Are Factually Unsupported And Legal Unsound……………………………………………………14

        C.    This Court Should Order Respondents To Produce Documents, And To Appear Before the Arbitration Panel At A Date And Time To Be Set By the Panel, Notwithstanding Claims Of Burden Or Privilege……16

        D.    Respondents' Argument That The Summonses Did Not Give An Address For Contacting The Panel Should Be Rejected Out Of Hand….19

CONCLUSION………………………………………………………………………20

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Bailey Shipping Ltd. V. Am. Bureau of Shipping*,
  2014 U.S. Dist. LEXIS 98338 (S.D.N.Y. July 18, 2014) ........................................7

*Bankers Conseco Life Ins. Co. v. Egan-Jones Ratings Co.*,
  No. 2:18-MC-00166-JS (E.D. Pa. Oct. 1, 2018) ...................................9

*Brookfield Asset Mgmt. v. AIG Fin. Prods. Corp.*,
  2013 U.S. Dist. LEXIS 29543 (S.D.N.Y. Jan. 7, 2013) ........................................18

*Doscher v. Sea Port Group Securities, LLC*,
  832 F.3d 372 (2d Cir. 2016) .....................................10

*Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C.*,
  2008 U.S. Dist. LEXIS 20713 (N.D. Ill. Mar. 13, 2008) ...........................9

*Hay Group, Inc. v. E.B.S. Acquisition Corp.*,
  360 F.3d 404 (3d Cir. 2004) .................................12, 15

*Lowinger v. Morgan Stanley & Co. LLC (In re Facebook, Inc., IPO Sec. &
  Derivative Litig.)*,
  43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................9, 10

*Odfjell ASA v. Celanese AG*,
  348 F. Supp. 2d 283 (S.D.N.Y. 2004) ..............................8, 9

*Seaton Ins. Co. v. Cavell USA*,
  2007 U.S. Dist. LEXIS 104589 (D. Conn. Mar. 21, 2007) ...........................7, 9, 11

*Shasha v. Malkin*,
  2018 U.S. Dist. LEXIS 112230 (S.D.N.Y. July 5, 2018) ...................................16

*Stolt-Nielsen Transp. Group, Inc. v. Celanese AG*,
  430 F.3d 567 (2d Cir. 2005) ...........................7, 10, 12, 13

*Zubulake v. UBS Warburg LLC*,
  216 F.R.D. 280 (S.D.N.Y. 2003) .....................................18

**FEDERAL STATUTES**

Federal Arbitration Act ......................................................*passim*

## <u>TABLE OF AUTHORITIES</u>
### <u>(cont'd)</u>

**Page(s)**

**FEDERAL RULES**

Fed. R. Civ. P. 45(a)(1)(C) ....................................................................................18

Fed. R. Evid. 502(d)....................................................................................6, 17, 18

**OTHER AUTHORITIES**

Advisory Committee Note to Fed. R. Evid. 502(d) ...................................................18

## PRELIMINARY STATEMENT

This is a simple petition to enforce arbitration summonses issued pursuant to the Federal Arbitration Act (the "FAA") by an arbitration panel (the "Panel") sitting in New York.  Section 7 of the FAA provides that if anyone summoned to testify by arbitrators in an arbitration "shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators[.]"  This statute and the caselaw applying it (*see* p. 9, *infra*) require enforcement where, as here, the summonses were served and the respondents failed to attend the hearing in New York City.

Yet respondents Obex Group LLC ("Obex") and Randall Katzenstein ("Katzenstein") (collectively, "Respondents") have now filed two more motions in a last-ditch attempt to avoid (or at least run out the clock on) their obligations.  This Court has already determined that their first motion—to dismiss for lack of jurisdiction—was "meritless."  (Exhibit 1 to Respondents' Request for Judicial Notice ("Dec. 10, 2018 Tr.") at 27:21.)  These current two motions are equally "meritless," relying on a combination of misstated law and misrepresented facts.

The underlying arbitration concerns, among other things, a massive fraud scheme concocted by Platinum Partners and its affiliates ("Platinum").[1]  In 2013, Petitioner and one its affiliates sought to reinsure certain blocks of long-term care business, and ultimately entered into reinsurance agreements with the reinsurer Beechwood Re Ltd. ("Beechwood Re").  The extent to

---

[1]     Platinum and its principals are the subjects of governmental investigations and criminal proceedings, including *U.S. v. Seabrook and Huberfeld*, 16-CR-467 (S.D.N.Y.), *U.S.. v. Nordlicht, et al.*, 16-CR-640 (E.D.N.Y.), and *SEC v. Platinum Management (NY) LLC, et al.*, 16-CV-6848 (E.D.N.Y.).  They are also subjects of additional private litigation (beyond the Arbitration) detailing their egregious misconduct with respect to Beechwood Re.  *E.g.*, *Martin Trott and Christopher Smith, as Joint Official Liquidators and Foreign Representatives of Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) and Platinum Partners Value Arbitrage Fund L.P. (in Official Liquidation) v. Platinum Management (NY) LLC, et al.*, 1:18-cv-10936 (S.D.N.Y.).

which Platinum covertly controlled Beechwood Re—and Platinum's nefarious attempts to leverage assets ceded to Beechwood Re as part of the reinsurance agreements—are important issues in the underlying arbitration, and the Arbitration Panel has already held that the information sought from Respondents is relevant to the arbitration proceedings.  (December 28, 2018 Declaration of Richard Epstein ("Epstein Decl.") Ex. 4.)

First, Respondents seek reconsideration of the denial of their first "meritless" motion to dismiss.  None of the cases cited by Respondents stand for the proposition that this Court must look beyond the parties to the Petition to ascertain whether there is diversity jurisdiction.  (*See* p. 10, *infra*.)  It is at least as frivolous (and wasteful of time and attorneys' fees) as the first motion and should be rejected out of hand.

Second, Respondents now also contend that the summonses served upon them amount to improper requests for "pre-hearing discovery," rather than proper summonses to a "formal hearing" under Section 7 of the Federal Arbitration Act.  The very caselaw upon which Respondents rely shows this to be false.  Respondents argue that the timing of the appearance specified in the summonses, or the precise scope of the proceedings to be conducted, somehow transform summonses to (i) appear before the Panel, (ii) testify, and (iii) hand over documents into naked document subpoenas.  This argument has been considered—and rejected—by the Second Circuit and other Federal Courts and, in any event, is factually inaccurate.

Respondents further contend that Petitioner's prior offer (in connection with prior requests to Respondents before the issuance of the arbitration summonses at issue) to let Respondents use only certain search terms *in the first instance, while expressly reserving its rights*, somehow amounts to a waiver of any requirement that Respondents to anything further to comply with the *a different set of arbitration summonses*.  Just as in their first motion, which this

Court described as "misleading" (Dec. 10, 2018 Tr. at 17:25-18:1), Respondents continue here to dissemble before the Court.  Most egregiously, Respondents also have the temerity to complain about burden and to seek reimbursement of their costs after already having put Petitioner and the Court through the delay and expense of these "meritless" and "misleading" motions.  Such gamesmanship should not be rewarded.

The final arbitration hearing is scheduled to commence on March 11, 2019.  The arbitration summons will be for naught—and Respondents' gamesmanship to run out the clock will have prevailed—unless Respondents' baseless arguments are rejected and this Court promptly orders compliance with the arbitration summonses.  Accordingly, Petitioner respectfully requests both that this Court deny Respondents' pending motions and instead issue an Order requiring immediate compliance with the arbitration summonses.

## STATEMENT OF FACTS

### A.     The Arbitration

Petitioner and its affiliate Bankers Conseco Life Insurance Co. ("BCLIC") are Claimants in a pending arbitration against Beechwood Re, its affiliate Beechwood Capital Group, LLC, and certain individuals styled *Bankers Conseco Life insurance Co. & Washington National Insurance Co. v. Beechwood Re, Ltd., et al.*, AAA Case No. 01-16-0004-2510 (the "Arbitration").  (Epstein Decl. ¶ 2.)  In the Arbitration, Petitioner alleges, among other things, that it was fraudulently induced to enter into a reinsurance agreement with Beechwood Re.  This fraud included concealing the extent of Beechwood Re's connections—through both common personnel and economic control—to a hedge fund known as Platinum Partners ("Platinum"), which used Beechwood Re to support its Ponzi-like scheme and to invest in other companies in which Platinum had interests, in violation of Beechwood Re's duties to Petitioner.  (*Id.* ¶ 3.).  The

Claimants in the Arbitration seeks far in excess of $75,000 in damages.  (*Id*. ¶ 2).  The Panel has scheduled the final hearing on the merits for March 11, 2019.  (*Id*. ¶ 20.).

**B.      Respondents Failed To Search For Or Produce Important Documents In Response To Petitioner's Prior Efforts.**

Obex has admitted, through its counsel, that it is in possession of materials responsive to arbitration summonses served upon it.  (Epstein Decl. ¶ 4; Epstein Decl. Ex. 3.)  Mr. Katzenstein is the president and chief executive officer of Obex.  (November 21, 2018 Declaration of Helen Kim ("Nov. 21 Kim Decl.") ¶ 2.)  Petitioner had previously served subpoenas on Obex and Katzenstein, and they produced some documents in response.  In the course of negotiating the parameters of this previous production, Petitioner's counsel offered to withdraw—temporarily— a previous request for the use of certain search terms, subject to a reservation of "the right to revisit the issue at a later date[.]"  (December 21, 2018 Declaration of Helen Kim ("Dec. 21 Kim Decl.") Ex. J. at 6.)  At another point in these negotiations, Petitioner's counsel offered—as part of a proposal to reduce any purported burden on Respondents—to waive the requirement that Katzenstein appear personally before the Panel.  (Dec. 21 Kim Decl. Ex. I at 1-2.)

It later became clear, however, that Respondents had more (and more significant) information than they produced.  Another non-party to the arbitration produced an email with Katzenstein showing the corrupt relationship between Beechwood Re and Platinum, and Obex's awareness of that relationship.  (Epstein Decl. ¶ 9.)  In this email, Katzenstein offered to arrange meetings on behalf of Will Slota and Mark Nordlicht, whom he described as "the management of Platinum," in connection with "Grantor Trusts totaling $580 [million]," the same trusts that Beechwood Re was supposed to manage for Petitioner and BCLIC.  (Exhibit 1 to Epstein Decl. Ex. 1.)  Katzenstein explained that "the Trusts will be managed by Platinum related persons, but

not have any legal relationship to the various Platinum funds."  (Exhibit 1 to Epstein Decl. Ex. 1.)

### C.     The Arbitration Summonses Issued To Obex And Katzenstein

Having seen this shocking new evidence, Petitioner and its affiliate went back to the Panel to request that actual arbitration summonses be issued to Respondents, compelling them to appear, testify, and provide additional documents.  On August 24, 2018, the Panel executed and issued two arbitration summonses.  These summonses required the appearance of Randall Katzenstein—both on behalf of Obex and individually—at an "arbitration hearing, to be held before one or more of the undersigned arbitrators, to be held on October 15, 2018 at 3 p.m., at Proskauer Rose LLP, Eleven Times Square, New York NY 10036."  The summonses each further required that Mr. Katzenstein bring with him "the documents identified in Schedule A annexed to this SUMMONS."  (Epstein Decl. ¶ 6; Epstein Decl. Exs. 1-2.)  On September 10, 2018, Helen Kim, Esq., an attorney at Thompson Coburn LLP, agreed to accept service of the summonses on behalf of Obex and Mr. Katzenstein.  (Epstein Decl. ¶ 7; Epstein Decl. Ex. 3.)

### D.     Obex and Katzenstein Failed To Comply With The Arbitration Summonses

On October 15, 2018, the Panel convened a hearing at the offices of Proskauer Rose LLP, at Eleven Times Square, New York NY 10036, just as the summonses stated.  The purpose of this hearing was to take Respondents' testimony and obtain their documentary evidence, in accordance with the summonses served on them.  The Panel was also prepared to rule on any evidentiary objections relating to this testimony and documentary evidence.  (Epstein Decl. ¶ 15.)  But neither Katzenstein, nor any other representative of Obex, appeared at the October 15 hearing.  (Epstein Decl. ¶¶ 17-18.)

**E.      The Order Affirming That The Arbitration Summonses Should Be Enforced**

As a result of Respondents' failure to comply with the arbitration summonses and appear

at the scheduled hearing in New York, the Panel issued an order addressing Respondents' failure

to comply with the arbitration summonses.  That order (a) found that the "documents and

information sought by the Arbitration Summonses are relevant to the issues raised in the

Amended Arbitration Demand," (b) "unanimously affirm[ed] that the Arbitration Summonses

should be enforced by a Court of appropriate jurisdiction," and (c) granted "leave to pursue

judicial intervention to obtain compliance [with the arbitration summonses] from Obex Group

LLC and Randall Katzenstein[.]"  (Epstein Decl. Ex. 4.)  Petitioner then initiated this action.

**F.      Respondents Unsuccessfully Moved To Dismiss The Petition To Enforce The
          Summonses**

Respondents moved to dismiss this action, arguing that this Court lacked subject matter

jurisdiction.  That motion, which the Court described during argument as "plainly without merit"

and "meritless" (Dec. 10, 2018 Tr. at 10:6, 10:22, and 27:21) was denied by order dated

December 10, 2018.  (ECF No. 25.)  Prior to the Court's decision on that motion, Respondents

also filed a letter asserting that the summonses were burdensome.  (ECF No. 21; *see also* Dec.

10, 2018 Tr. at 28:8-9 (Respondents' counsel, explaining that her "client is not some big business

for which this is an insignificant cost").)  However, Respondents have previously declined **three**

**separate proposals** to alleviate any burden by either (a) having Petitioner hire an e-discovery

vendor to image the documents and review them for relevant material, with an agreement that

any privileged material could be clawed back pursuant to Federal Rule of Evidence 502(d), all at

no cost to Respondents, (b) narrowing the timeframe of the document request to six months

(from an original timeframe of thirty-eight months), or (c) having Petitioner hire an e-discovery

vendor to image the documents, at no cost to Respondents, with Respondents conducting their

6

own review at their own cost.  (Epstein Decl. ¶ 13; Dec. 21 Kim Decl. Ex. N.)  In any event,
Platinum has waived its right to argue burden (or any other issue concerning the scope of the
arbitration summonses) by failing to appear at the scheduled hearing.

## LEGAL ARGUMENT

### I.       THE PETITION SHOULD BE GRANTED.

Section 7 of the Federal Arbitration Act "unambiguously authorizes arbitrators to
summon nonparty witnesses to give testimony and provide material evidence before an
arbitration panel."  *Stolt-Nielsen Transp. Group, Inc. v. Celanese AG*, 430 F.3d 567 (2d Cir.
2005).  The same statute also empowers this Court to enforce such a summons.  9 U.S.C. § 7.  In
assessing an arbitration summons, a court has an extremely limited role.  "[T]he cardinal
principles of deference that guide federal court review of arbitral decisions do not permit review
of orders governing discovery, the introduction of evidence, or hearing format," because "doing
so would challenge the strong federal policy in favor of arbitration enshrined in the Federal
Arbitration Act."  *Bailey Shipping Ltd. V. Am. Bureau of Shipping*, 2014 U.S. Dist. LEXIS
98338, at *4-*5 (S.D.N.Y. July 18, 2014) (internal quotation marks and citations omitted).

When an arbitration panel has already concluded that the evidence it seeks through a
summons is relevant, a court may not "draw[] an independent conclusion on the same topic[.]"
*Id.* at *12.  As this Court previously noted, "the arbitration panel is far better positioned than this
Court to make any assessment of whether the non-parties' testimony is material, cumulative or
otherwise objectionable").  (Dec. 10, 2018 Tr. at 15:20-23) (internal quotation marks and citation
omitted).)  Similarly, arguments about the burden imposed by summoning a non-party are
"properly brought before the arbitration panel," not this Court.  *Seaton Ins. Co. v. Cavell USA*,
2007 U.S. Dist. LEXIS 104589, at *9 (D. Conn. Mar. 21, 2007); *see also* Dec. 10, 2018 Tr. at
15:20-16:5.

Respondents cite only one case within the Second Circuit, *Odfjell ASA v. Celanese AG*, 348 F. Supp. 2d 283 (S.D.N.Y. 2004), *aff'd sub nom. Stolt-Nielsen Transp. Group, Inc. v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005), for the proposition that arguments about the scope of the summonses should be made to this Court.  But, just as in their prior motion, Respondents misstate the law.  That is to say, *Odfjell* held no such thing, and in fact stated the exact opposite: [O]bjections on the grounds of privilege and the like should first be heard and determined by the arbitrator before whom the subpoena is returnable."  *Id.* at 288.

Petitioner has done exactly what a party to an arbitration seeking documents and testimony from a non-party is supposed to do under the FAA, and furthermore has behaved eminently reasonably in its dealings with Respondents.  It originally sought information from Respondents and, acknowledging their technical limitations and the costs involved, agreed to accept only some of the information demanded, without prejudice to its right to insist on a more rigorous search if the less burdensome one proved inadequate.  After it became clear that Respondents were in possession of additional, highly relevant information that had not been turned over, Petitioner went before the Arbitration Panel and obtained two arbitration summonses, fully in compliance with Article 7 of the FAA, seeking testimony at a hearing and documents from the witness.  Those summonses were served on Respondents through their counsel, Ms. Kim, who accepted service.  Yet Respondents did not appear, and did not produce documents.  At that point, Petitioner sought leave from the Panel to seek court intervention to force Respondents to comply.  The Panel granted that leave, and Petitioner filed its Section 7

Petition in this court, which is in the district where the Panel is sitting[2] and is located just down the road from Petitioners' residence and principal place of business in Westchester County.

This Court has already declared that it cannot "think of any non-frivolous argument for not complying with the summonses." (Dec. 10, 2018 Tr. at 14:2-3.) The Court was and remains correct, and we respectfully submit that the Court should put an end to Respondents' efforts to "drag this out as much as [they] possibly can," (*id*. at 27:23), and grant the Petition, as other courts have done in precisely these circumstances. *E.g.*, *Odfjell*, 348 F. Supp. 2d at 286 (enforcing arbitrator-issued subpoenas "call[ing] for the non-party to appear before the arbitrators themselves to testify and to produce certain documents"); *Seaton Ins. Co. v. Cavell USA*, 2007 U.S. Dist. LEXIS 104589 (D. Conn. Mar. 21, 2007); *Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C.*, 2008 U.S. Dist. LEXIS 20713, at *3 (N.D. Ill. Mar. 13, 2008) (granting petition and holding that issues of relevance, overbreadth, and privilege "should be raised with the arbitration panel" rather than the court hearing a Section 7 petitioner); *Bankers Conseco Life Ins. Co. v. Egan-Jones Ratings Co.*, No. 2:18-MC-00166-JS (E.D. Pa. Oct. 1, 2018) (Epstein Decl. Ex. 6).

## II.       THE MOTION FOR RECONSIDERATION IS UTTERLY MERITLESS.

Likewise, there is no "non-frivolous" argument supporting Respondents' motion for reconsideration. Reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," and is not a "substitute for appealing." *Lowinger v. Morgan Stanley & Co. LLC (In re Facebook, Inc., IPO Sec. & Derivative Litig.)*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "Reconsideration motions are not a vehicle for relitigating old issues,

---

[2]       As explained in greater detail in Part II, *infra*, the notion that the Panel is not in fact sitting within the Southern District of New York when it in fact sat at a Midtown Manhattan office on October 15, 2018 awaiting Respondents' appearance and testimony is absurd.

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Id.* at 375.  The movant must "demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might materially have influenced its earlier decision." *Id.* (internal quotation marks and citation omitted).  Thus, the movant "may neither repeat arguments already briefed, considered and decided, nor advance new facts, issues or arguments not previously presented to the Court." *Id.* (internal quotation marks and citation omitted).

This Court previously considered and thoroughly debunked Respondents' "meritless" jurisdictional arguments.  That should end the matter insofar as this Court is concerned.  Indeed, it is difficult to identify anything the Court overlooked in its prior decision.  The only decision on the jurisdictional issue that (i) would bind this Court and (ii) was not already cited by Respondents in prior briefing is *Doscher v. Sea Port Group Securities, LLC*, 832 F.3d 372 (2d Cir. 2016).  But Respondents (again) misrepresent the case holding.  Contrary to Respondents' argument, *Doscher* did not hold that a federal court considering a Section 7 petition "must" apply a "look-through approach" to determine jurisdiction.  Instead, *Doscher* "adopt[ed] the rule that a federal district court faced with a § 10 petition *may* 'look through' the petition to the underlying dispute." *Id.* at 386 (emphasis supplied).  In other words, just as is true under *Stolt-Nielsen Transp. Group, Inc. v. Celanese AG*, 430 F.3d 567, 573 (2d Cir. 2005), a court's hypothetical jurisdiction over the underlying dispute is a *sufficient* condition to find jurisdiction over the ancillary dispute, but not a *necessary* one.

Respondents also make a brand new argument on reconsideration:  that this Court lacks jurisdiction because the arbitrators are not, in fact, sitting in the Southern District of New York.  This is demonstrably false.  One need only look to the summonses themselves to see that they

commanded an appearance at an "arbitration hearing, to be held before one or more of the undersigned arbitrators, to be held on October 15, 2018 at 3 p.m., at Proskauer Rose LLP, Eleven Times Square, New York NY 10036."  That hearing in fact took occurred at the appointed time and place, even though Respondents failed to comply.  (Epstein Decl. ¶¶ 15-18.)  Moreover, the contracts containing the agreement to arbitrate themselves provide that the arbitration will take place in New York, New York.  (Nov. 21 Kim Decl. Ex. B (original arbitration demand) at ¶ 134 ("Pursuant to Section l0(c) of the Reinsurance Agreements, the arbitration 'shall be held in the City of New York, New York, unless a different location is mutually agreed upon by the Parties.'").

Despite this, Respondents seek to sow doubt about where the Panel is sitting by citing two facts.  First, they point out that the arbitrators do not live in New York.  Second, they point out that the Panel once sat in the Eastern District of Pennsylvania, in connection with another summons.  But arbitrators can of course sit in places other than their own domiciles, and the same panel is free to sit in multiple locations.  As the court recognized in *Seaton*, 2007 U.S. Dist. LEXIS 104589, *5-*6 (D. Conn. Mar. 21, 2007), arbitrators and arbitration parties are in fact free to move the location of the arbitration temporarily, even if only for the purpose of compelling testimony and document production from a non-party:

> There is no dispute that Seaton and NICO seek to have the defendants provide documents and testimony in a "formal arbitration hearing" in Hartford, Connecticut.  The fact that the location of the arbitration hearing will be held at a location other than the one designated by the arbitration agreement does not have any bearing on the propriety of the subpoenas issued pursuant to section 7.  Indeed, the defendants have not identified nor can the court find any statute or rule that prevents the parties to an arbitration agreement from mutually agreeing to move the arbitration to a location other than the one designated in an arbitration agreement, even when the sole reason for doing so is to

> obtain testimony and documents from witnesses who would not be
> subject to subpoenas in the contractually designated location.

The fact that the Panel once sat in Philadelphia in connection with a summons to another third party does not change the fact that the Panel sat in New York in connection with the summonses at issue here, and cannot somehow negate this Court's authority to compel compliance with these summonses.  Respondents' position is frivolous and should be rejected.

### III.    THE MOTION TO QUASH SHOULD BE DENIED.

#### A.    The Summonses Seek A Personal Appearance And Testimony Before The Arbitration Panel, Not Improper Pre-Hearing Discovery.

In *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, the Second Circuit established a clear rule:  "[A]rbitrators may, consistent with section 7, order 'any person' to produce documents so long as that person is called as a witness at a hearing."  549 F.3d 210, 218 (2d Cir. 2008) (quoting 9 U.S.C. § 7).  The summonses direct Obex and Katzenstein to do exactly that—appear before the Panel and testify at a hearing, with their documents in tow.  The *Life Receivables* court did hold that "the FAA does not authorize arbitrators to compel pre-hearing document discovery from entities not party to the arbitration proceedings," *id.* at 216-17, but made clear that an appearance to testify before an arbitration panel, coupled with a requirement to produce documents, was not prohibited pre-hearing document discovery.

Indeed, the *Life Receivables* court, building on the Third Circuit's decision in *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404 (3d Cir. 2004), emphasized that arbitrators "have the power to compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings."  *Life Receivables*, 549 F.3d at 218 (quoting *Hay*, 360 F.3dat 413 (Chertoff, J., concurring) (internal quotation marks omitted)).  It is the requirement to appear before the arbitrator, especially when coupled with testimony, that makes a third-party summons valid under Section 7.  *See Stolt-Nielsen*, 430 F.3d at 578 (distinguishing between

impermissible depositions held outside the presence of the arbitrators and valid directives "to appear at a hearing before the arbitrators").

To be clear, the appearance contemplated by the summonses was to attend a merits hearing.  On the appointed day, the Panel was present, counsel for the arbitration parties was present, a reporter was present to record testimony, and the Panel was prepared to rule on any objections to the admissibility of testimony or documents.  (Epstein Decl. ¶¶ 15-16.)  Whatever testimony resulted would then become part of the "trial" record considered by the Panel in reaching its ultimate decision.  (Epstein Decl. ¶¶ 15-16.)  The fact that the October 15 appearance would take place months before the expected "final" merits hearing is of no moment.  "[T]he mere fact that the session before the arbitration panel on December 21 was preliminary to later hearings that the panel intended to hold does not transform the December 21 hearing into a discovery device."  *Stolt-Nielsen*, 460 F.3d at 578.  *Stolt-Nielsen* shows that it would be impossible to draw any meaningful distinction based upon the timing of the proceedings:

> Arbitration hearings, even 'trial-like merits hearings,' are often continued, frequently with many months elapsing between hearing sessions.  If the arbitrators had summoned [witnesses] for the first day of the scheduled hearings on the merits on October 17, 2005, heard their testimony, and then adjourned for ten months, before reconvening, even Stolt would concede that Section 7 would authorize the subpoenas.  Yet, according to Stolt, the ten-month gap here between the December 21, 2004, hearing and the beginning of the 'merits' hearing somehow rendered the subpoenas invalid.  Nothing in the language of Section 7or common sense dictates such a result.

*Id.* at 580.  Simply stated, Respondents ignore or misrepresent clear Second Circuit precedent that rejects their discredited arguments about impermissible pre-hearing discovery.

**B.  Respondents' "Waiver" Arguments Are Factually Unsupported and Legally Unsound.**

In Respondents' telling, Petitioner made an irrevocably promise that it would never seek another document after receiving an initial production.  Their argument to quash is largely premised on the notion that "OBEX and Katzenstein had fully complied with their obligations under the Original Summonses, as narrowed by Washington National and Bankers Conseco[.]" (Mot. To Quash Br. at 8.)  But Petitioner had not "narrowed" the requested document search irrevocably; it agreed to accept the use of fewer search terms *subject to a reservation of rights*, which Respondents willfully ignore.

First, Petitioner repeatedly made clear to Respondents' counsel that its willingness to accept production of documents from a more limited search terms was subject a reservation of the right to demand additional documents if circumstances warranted it.  As Exhibit I to Ms. Kim's declaration shows, Claimant's counsel explained to Respondents' counsel that:

> [i]n order to address [Respondents'] concerns and narrow Request No. 2, below are two lists.  First is a list of Beechwood names/acronyms/search terms/domain names that do not include any "Platinum" names.  Second is a list of investments to search (rather than just search the name "Platinum", which you said would yield thousands of irrelevant documents).  *These lists are, of course, subject to your right to come back to me after searches are run to claim that some term(s) yielded too many not responsive hits, and my right to come back to you if these terms do not yield the appropriate responsive documents*.

(Dec. 21 Kim Decl. Ex. J at 8 (emphasis supplied.)  Moreover, Claimant's counsel repeated its reservation of rights later on, when it acceded (for the time being) to Respondents' request not to use the search terms PPVA and PPCO:  "As to Request No. 2, we will agree to your request to remove the PPVA and PPCO search terms.  Please note that Claimants reserve the right to revisit this issue at a later date (and understanding that Obex/Mr. Katzenstein reserve the right to continue to object)."  (Dec. 21 Kim Decl. Ex. J. at 6.)  It was pursuant to this agreement—

including its reservations of rights—that Respondents made their initial, limited document production.  (*See* Dec. 21 Kim Decl. Ex. J at 2.)

Relatedly, Respondents argue that Petitioner's prior willingness to waive the requirement that Respondents appear before the Panel in regard to different subpoenas—not the arbitration summonses at issue—somehow invalidates the Petition.  This is not true, either.  The waiver of appearance was offered for the convenience of Respondents, who said that they could not produce the initial documents in time for the scheduled appearance.  (Dec. 21 Kim Decl. Ex. I at 1-2 (Claimant's counsel explaining that, if no appearance is required, an extension of the production deadline can be agreed with the Panel's involvement.)  This type of offer is common and accepted practice when dealing with third parties in arbitration.  "In many instances, of course, the inconvenience of making such a personal appearance may well prompt the witness to deliver the documents and waive presence." *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 413-14 (3d Cir. 2004) (Chertoff, J., concurring); *see also Life Receivables*, 549 F.3d at 212 (adopting the rule in *Hay Group*).

Moreover, all of this ignores that the facts on the ground changed after the initial document production.  Thanks to information provided by other third parties, it became clear that Respondents were directly involved in trying to arrange meetings on behalf of the "management of Platinum" to discuss how to manage the assets in the trusts that Beechwood Re (not Platinum) was supposed to manage for Petitioner and its affiliate.  (Exhibit 1 to Epstein Decl. Ex. 1; Exhibit 3 to Dec. 21 Kim Decl. Ex. M.).  The Panel agreed and issued two new arbitration summonses— the ones at issue here—and those comply with all of the requirements of Section 7 of the FAA and the Second Circuit's legal precedent.

**C.     This Court Should Order Respondents To Produce Documents, And To Appear Before The Arbitration Panel At A Date And Time To Be Set By The Panel, Notwithstanding Claims Of Burden Or Privilege.**

This Court has correctly observed that "[w]hen faced with a motion to enforce an arbitration subpoena, the Court is not required to independently assess the evidentiary value of the testimony sought," and that it would be "self-evidently inefficient" to do so, when the arbitration panel is "far better positioned than this Court to make any assessment of whether the non-parties' testimony is material, cumulative or otherwise objectionable." (Dec. 10, 2018 Tr. at 15:12-15, 20-23, 16:4-5 (citing *Shasha v. Malkin*, 2018 U.S. Dist. LEXIS 112230, at *5-*6 (S.D.N.Y. July 5, 2018)).) For these very sound reasons, the Court has already noted that "it seems unlikely that I would entertain respondents' particular objections to the summonses, such as those based on overbreadth, burden and attorney/client privilege." *Id*. at 15:8-11.

Even if the Court were inclined to address any of these issues of burden or privilege, they can be dispensed with easily. Given the fact that (as explained in Part III.B, *supra*) Claimant always reserved its rights to demand the production of additional documents, the Court should give no credence to Respondents' argument that the summonses are per se unduly burdensome because they are "duplicative of the Original Summonses, and otherwise violate agreements regarding documents Respondents would not be required to produce[.]" (Mot. To Quash Br. at 20.) Moreover, Respondents should not be heard to complain of burden or costs when they have already rejected multiple compromise offers and put Petitioner, as well as this Court, through the delay and expense of a "meritless" motion to dismiss, which was supported by papers the Court has already described as "misleading." (Dec. 10, 2018 Tr. at 27:21 and 17:25-18:1.) Finally, the arbitration summonses themselves clearly state that Respondents needs not produce documents already produced. (Schedule A to Epstein Decl. Ex. 1 at 4.)

We believe that an Order should be entered compelling Respondents to, at their own expense, appear before the Panel at a date set by the Panel and provide all responsive, non-privileged documents.  Nevertheless, in the interest of getting Petitioner the relevant documents it needs in time to use them in the pending arbitration and reducing the cost/burden to Respondents, we remain willing to proceed with an Order that requires Respondents to permit Petitioner's vendor, at Petitioner's expense, to copy Respondents' data and search for the terms "Platinum," "PPVA," "PPCO," and "B w/2 Asset" over the date range of October 15, 2013 through December 31, 2014.  Petitioner would review the responsive documents at its cost, subject to an order pursuant to Federal Rule of Evidence 502(d) permitting the clawback of any privileged material.  The Court should also order Katzenstein to appear before the Panel at a date set by the Panel.  This proposal (which has a shorter date range for documents that that specified in the Summonses themselves) would eliminate any claimed expense for Respondents and allow Petitioner to collect the information it needs efficiently, using search terms that Obex itself is incapable of employing.  (*See* Dec. 21 Kim Decl. Ex. J at 6 (discussing use of "w/2" operator).)

Respondents quibble with this cost-free solution because they claim that a 502(d) order cannot protect them "against a voluntary waiver of attorney-client privileged documents."  Even if production of privileged documents in these circumstances could be considered "voluntary," this is incorrect.  First, former Southern District of New York Magistrate Judge Andrew J. Peck had a model order expressly providing that "[t]he production of privileged or work-product protected documents, electronically stored information ('ESI') or information, *whether inadvertent or otherwise*, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding."  (Epstein Decl. Ex. 7 (emphasis supplied.)  Second,

17

in *Brookfield Asset Mgmt. v. AIG Fin. Prods. Corp.*, 2013 U.S. Dist. LEXIS 29543, at \*2-\*3

(S.D.N.Y. Jan. 7, 2013), Magistrate Judge Maas explained that:

> even if AIG or its counsel had dropped the ball (which they did
> not), the parties at my urging had entered into a Rule 502(d)
> stipulation which I so ordered on February 11, 2011.  *See* Fed. R.
> Evid. 502(d).  That stipulation (ECF No. 57) contains one decretal
> paragraph, which provides that 'Defendants' production of any
> documents in this proceeding shall not, for the purposes of this
> proceeding or any other proceeding in any other court, constitute a
> waiver by Defendants of any privilege applicable to those
> documents, including the attorney-client privilege . . .
> .'  Accordingly, AIG has the right to claw back the minutes, *no
> matter what the circumstances giving rise to their production
> were.*"

(Emphasis supplied).  Finally, the drafters of Rule 502(d) themselves explained in the Advisory

Committee Note accompanying Federal Rule of Evidence 502(d) that "the court order may

provide for return of documents without waiver *irrespective of the care taken by the disclosing

party*; the rule contemplates enforcement of 'claw-back' and 'quick peek' arrangements as a way

to avoid the excessive costs of pre-production review for privilege and work product."  Fed. R.

Evid. 502 Advisory Committee Note (revised 11/28/2007) (emphasis supplied) (citing *Zubulake

v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003).)  A 502(d) order along these lines

is all the privilege protection Respondents could need.[3]  This Court should order Respondents'

compliance with this search and production methodology.

---

[3]      Respondents also complain that a 502(d) order is used "ordinarily in the context of
discovery, but the FAA does not permit pre-hearing discovery."  (Mot. To Quash Br. at 10.)  But
Federal Rule of Evidence 502(d) is not a *discovery* rule—it is a rule of *evidence*, and it gives a
court the power to make a production of a privileged document "not a waiver in any other federal
or state proceeding," whether that production takes place in discovery or at trial.  Fed. R. Evid.
502(d); *cf.* Fed. R. Civ. P. 45(a)(1)(C) (providing that a "command to produce documents,
electronically stored information, or tangible things . . . may be included in a subpoena
commanding attendance at a deposition, hearing, or trial").

**D.      Respondents' Argument That The Summonses Did Not Give An Address For Contacting The Panel Should Be Rejected Out Of Hand.**

Respondents assert that the "Summonses provide no address or other contact information for the arbitral tribunal." (Mot. To Quash Br. at 15.)  However, they cite no authority for the proposition that an arbitration summons is somehow defective or subject to attack because it failed to include contact information for the Panel.  Moreover, Respondents have shown themselves to be fully capable of finding contact information for each member of the Panel, when they consider it to be in their interest to do so.  (*See* Mot. For Reconsideration Br. at 11 (citing websites for each of the three members of the Panel and reciting their places of residence).)  Respondents were clearly not prejudiced by any lack of an address on the summonses, and this disingenuous argument further demonstrates Respondents' interest in creating confusion and delay, rather than resolving this dispute.  (Dec. 10, 2018 Tr. at 27:23 (the Court noting Respondents' efforts to "drag this out as much as [they] possibly can").)

## <u>CONCLUSION</u>

For the forgoing reasons, Petitioner respectfully requests that this Court: (i) deny

Respondents' motion for reconsideration, (ii) deny Respondents' motion to quash the arbitration

summonses, (iii) grant the Petition, (iv) issue an order compelling Respondents to comply with

Petition no later than February 11, 2019, and (v) grant such other and further relief as this Court

deems just and fair.

Dated:  New York, New York                   Respectfully submitted,
        December 27, 2018
                                          SILLS CUMMIS & GROSS P.C.
                                          Joseph L. Buckley
                                          Richard H. Epstein
                                        Matthew L. Lippert


                                          By: S/ Richard H. Epstein

                                          (212) 643-7000
                                          *Attorneys for Petitioner Washington*
                                          *National Insurance Company*