```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WASHINGTON NATIONAL INSURANCE          :
COMPANY,                               :
                 Petitioner,           :
                                       :       **OPINION AND ORDER**
v.                                     :
                                       :       18 CV 9693 (VB)
OBEX GROUP LLC and RANDALL             :
KATZENSTEIN,                           :
                 Respondents.          :
--------------------------------------------------------------x
```

Briccetti, J.:

    Petitioner Washington National Insurance Company brings this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7 ("Section 7"), to enforce two arbitration summonses issued in <u>Bankers Conseco Life Insurance Co. & Washington National Insurance Co. v. Beechwood Re, Ltd., et al.</u>, AAA Case No. 01-16-0004-2510 (the "arbitration") to respondents Obex Group LLC and its principal, Randall Katzenstein.

Now pending are respondents' motions to quash the summonses at issue and for reconsideration or reargument of the Court's December 10, 2018, Order denying respondents' motion to dismiss for lack of subject matter jurisdiction. (Docs. ##27, 28).

For the following reasons, respondents' motions are DENIED and the petition to enforce the summonses is GRANTED. Respondents shall appear before the arbitration panel (the "panel") on a date of the panel's choosing and produce all responsive, non-privileged documents, to the extent required by the panel.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

# BACKGROUND

The parties have submitted briefs, declarations with exhibits, and a petition and answer with exhibits, which reflect the following background.

In the arbitration, petitioner alleges it was fraudulently induced to enter into a reinsurance agreement with Beechwood Re. Petitioner further alleges Beechwood Re concealed its connections to a hedge fund known as Platinum Partners ("Platinum"). According to petitioner, Platinum "used Beechwood Re to support its Ponzi-like scheme and to invest in other companies in which Platinum had interests, in violation of Beechwood Re's duties to Petitioner." (Doc. #30 ("Epstein Decl.") ¶ 3). Petitioner and its affiliate seek "at least $134 million in damages through the Arbitration." (Id. ¶ 2).

On February 22, 2018, the panel issued nonparty subpoenas requiring respondents to appear as witnesses at a hearing on March 26, 2018, and to bring with them documents identified in schedules attached to the subpoenas. Respondents objected to the subpoenas.

Petitioner twice agreed to narrow the scope of the subpoenas. In addition, petitioner agreed to extend respondents' time to produce the documents until April 11, 2018, and respondents agreed to produce the documents without the need for a hearing. On April 11, 2018, respondents produced 14,814 pages of documents, incurring $15,700.25 in attorneys' fees and costs as a result.

After respondents produced the documents on April 11, 2018, another non-party to the arbitration produced an email from respondent Katzenstein that respondents had not produced. In that email, respondent Katzenstein stated that four "Grantor Trusts" would "be managed by

Platinum related persons, but not have any legal relationship to the various Platinum funds."
(Epstein Decl. Ex. 1 at 13).[1]

Petitioner wrote to respondents asserting respondents had failed to produce documents responsive to the subpoenas and requesting production of additional documents. Respondents refused, stating they had fully complied with their obligations under the subpoenas.

On August 24, 2018, the panel issued two summonses requiring respondents to appear at a hearing in New York City on October 15, 2018, and to bring documents responsive to schedules attached to the summonses. Respondents objected to the August 24, 2018, summonses, and the parties were unable to resolve respondents' objections.

The panel proceeded with the October 15, 2018, hearing, and was prepared to receive testimony and documentary evidence from respondents pursuant to the August 24, 2018, summonses. Respondents failed to show. Thus, on October 15, 2018, the arbitration panel issued an order stating, "The documents and information sought by the Arbitration Summonses are relevant to the issues raised in the Amended Arbitration Demand filed by Claimants." (Epstein Decl. Ex. 4 ¶ 9). The order further stated, "The Panel unanimously affirms that the Arbitration Summonses should be enforced by a Court of appropriate jurisdiction" (id. ¶ 10), and granted claimants leave to pursue judicial intervention to obtain respondents' compliance with the summonses.

Petitioner filed a petition in this Court on October 22, 2018, seeking enforcement of the summonses. On November 21, 2018, respondents moved to dismiss the petition for lack of jurisdiction. In a bench ruling issued on December 10, 2018, the Court denied respondents'

---

[1] Citations to exhibits refer to the page numbers stamped by the Court's Electronic Case Filing system at the top of the page.

3

motion. (Doc. #25). On December 21, 2018, respondents moved for reconsideration or reargument of their motion to dismiss and to quash the summonses.

**DISCUSSION**

I. Standard of Review

    A. Motion for Reconsideration

"To prevail on a motion for reconsideration, the movant must demonstrate 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y.C. Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)). Such a motion should be granted only when the Court has overlooked facts or precedent that might have altered the conclusion reached in the earlier decision. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see SDNY Local Civil Rule 6.3.

The motion must be "narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." Range Rd. Music, Inc., v. Music Sales Corp., 90 F. Supp. 2d 390, 391–92 (S.D.N.Y. 2000). Further, the motion "may not advance new facts, issues, or arguments not previously presented to the court." Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995) (citing Morse/Diesel, Inc. v. Fid. & Deposit Co. of Md., 768 F. Supp. 115, 116 (S.D.N.Y. 1991)). This limitation ensures finality and "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988) (internal quotation omitted). Mere disagreement with the Court's decision is not a basis for reconsideration. Pro Bono Invs., Inc. v. Gerry, 2008 WL 2354366, at *1 (S.D.N.Y. June 9, 2008) (collecting cases).

4

B.     Motion to Quash

Section 7 of the FAA authorizes arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. If a person refuses to comply with the arbitrators' summons, a "United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." Id.

II.    Motion for Reconsideration

Respondents assert three arguments why the Court should grant reconsideration of their motion to dismiss for lack of subject matter jurisdiction: (i) the Court incorrectly determined the diversity of the parties by looking to the citizenship of the parties to the instant proceeding, rather than the parties to the underlying arbitration; (ii) petitioner fails to allege an amount in controversy sufficient to trigger diversity jurisdiction; and (iii) the Court lacks the power to adjudicate the petition because the arbitrators are not sitting in the Southern District of New York.

As an initial matter, respondents' motion for reconsideration is a thinly-veiled attempt to relitigate the motion to dismiss. Respondents do not raise any controlling precedent or facts that the Court overlooked. Instead, respondents rehash old arguments and raise entirely new issues. On that basis alone, respondents' motion for reconsideration is groundless. See Pro Bono Invs., Inc. v. Gerry, 2008 WL 2354366, at *1.

5

Nonetheless, for the reasons discussed below, the Court also rejects respondents' arguments on their merits.

A.   Diversity

Respondents argue the Court should grant reconsideration of the motion to dismiss because the Court overlooked three controlling decisions allegedly prohibiting the Court from finding diversity jurisdiction based on the citizenship of the parties to a Section 7 enforcement action. According to respondents, (i) Vaden v. Discover Bank, 556 U.S. 49 (2009), (ii) Doscher v. Sea Port Group Securities, LLC, 832 F.3d 372 (2d Cir. 2016), and (iii) Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567 (2d Cir. 2005), require the Court to "look through" a Section 7 petition to the citizenship of the parties to the underlying arbitration to determine the existence of diversity jurisdiction.

The Court disagrees.

None of the three cases respondents cite stands for the proposition that a court must look through a Section 7 petition to determine whether it may exercise diversity jurisdiction. None of the cases dealt with diversity jurisdiction or held a Court must look through a petition to determine jurisdiction; and neither Vaden v. Discover Bank nor Doscher v. Sea Port Group even involved a Section 7 petition. See Vaden v. Discover Bank, 556 U.S. at 53 (holding a court may look through a Section 4 petition to compel arbitration to determine whether it has federal question jurisdiction); Doscher v. Sea Port Group Securities, LLC, 832 F.3d at 388 (holding a court may look through a Section 10 petition to vacate an arbitration award to determine federal question jurisdiction); Stolt-Nielsen SA v. Celanese AG, 430 F.3d at 573 (holding a court retained jurisdiction in a case brought under 28 U.S.C. § 1333(1) over later petitions arising out of the arbitration) .

6

Moreover, Section 7 actions—unlike those involving Section 4 or Section 10—involve different parties than those in the underlying arbitration. Respondents' approach would have the Court ignore the citizenship of the parties to the controversy actually before the Court and rely on the citizenship of parties to a different controversy. Cf. In re Cianflone, 2014 WL 6883128, at *1 (N.D.N.Y. Dec. 4, 2014) ("[T]he controversy before the Court is not the dispute forming the basis of the arbitration. Rather, the controversy before the Court is whether the arbitration subpoena should be enforced.").

The Second Circuit's reasoning in Doscher v. Sea Port Group Securities, LLC supports looking to the parties to the enforcement action—rather than the parties in the underlying arbitration—to determine whether diversity jurisdiction exists. In that case, the court stated the FAA's "other sections similarly authorize particular courts with jurisdiction to issue particular remedies but do not affect the jurisdictional inquiry." 832 F.3d at 388. Respondents' approach would contravene this principle, as it depends on a finding that Section 7 deprives the Court of jurisdiction over a dispute the Court would otherwise be empowered to hear. See id.

Respondents also rely on Giusti v. Morgan Stanley Smith Barney, LLC, 581 F. App'x 34, 34 (2d Cir. 2014) (summary order), in which the Second Circuit found the petitioner had failed to supply an independent basis for federal jurisdiction over his Section 10 petition to vacate an arbitration award. But Giusti merely stands for the same proposition as Vaden v. Discover Bank: federal courts may look through a Section 10 petition to determine federal question jurisdiction. See Giusti v. Morgan Stanley Smith Barney, LLC, 581 F. App'x at 35.

In addition, respondents somehow contend the Court overlooked Stolt-Nielsen SA v. Celanese AG when it expressly rejected respondents' interpretation of that case in deciding respondents' original motion to dismiss.

As this Court previously held, Stolt-Nielsen does not support respondents' argument. In that case, the Second Circuit held that because the district court had jurisdiction under 28 U.S.C. § 1333(1) over an original request to stay arbitration, it "properly retained subject matter jurisdiction under 28 U.S.C. § 1333(1) over any later applications or petitions arising out of the parties' arbitration." 430 F.3d at 573. Thus, in Stolt-Nielsen, jurisdiction over the underlying arbitration was sufficient for the court to maintain jurisdiction over the subsequent Section 7 petition. See id. Nothing in Stolt-Nielsen, however, says jurisdiction over the underlying arbitration was necessary for the court to exercise jurisdiction over the subsequent petition.

Accordingly, the Court rejects respondents' argument that the Court must look through the Section 7 petition to determine whether it may exercise diversity jurisdiction.

B. Amount in Controversy

Respondents also argue petitioner fails sufficiently to allege the requisite $75,000 amount in controversy, because petitioner may not satisfy the amount-in-controversy requirement by relying on the amount at issue in the underlying arbitration.

The Court is not persuaded.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977). "The amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 68 (2d Cir. 2012) (quoting Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975)). "[A]bsolute certainty in valuation of the right involved is not required to meet the amount in controversy requirement." Wells Fargo Bank, Nat'l Ass'n v. CIT

8

Bank, N.A., 2017 WL 1184296, at *6 (S.D.N.Y. Mar. 29, 2017) (alteration in original) (quoting Moore v. Betit, 511 F.3d 1004, 1006 (2d Cir. 1975)).  Rather, "the requirement is that there be a reasonable probability of an amount in controversy exceeding jurisdictional amount if an amount can be ascertained pursuant to some realistic formula."  Moore v. Betit, 511 F.2d at 1006).

Petitioner seeks at least $134 million in damages in the underlying arbitration.  Even if documents responsive to the summonses pertain to only a small fraction of that sum, the amount in controversy requirement would still be satisfied.  Moreover, the panel has already determined that the summonses seek relevant information, thus increasing the responsive documents' value.

Accordingly, petitioner easily satisfies the $75,000 amount-in-controversy requirement.

C.   Place of Sitting

Respondents argue the Court lacks authority to adjudicate the petition because a majority of the panel's arbitrators are not sitting in the Southern District of New York.  Respondents did not raise this issue in their motion to dismiss.  However, respondents argue they would have asserted this argument had they been permitted to submit a reply to petitioner's opposition to their original motion to dismiss.

Respondents' argument is without merit.

Section 7 permits a party to petition a United States district court "for the district in which such arbitrators, or a majority of them, are sitting" to compel compliance with a summons. 9 U.S.C. § 7.  Section 7 does not authorize nationwide service of process.  Dynergy Midstream Servs., LP v. Trammochem, 451 F.3d 89, 96 (2d Cir. 2006).  Therefore, only a district court in which the arbitrators are sitting has authority to enforce a Section 7 subpoena.  See id.

Here, the summonses ordered respondents to appear at a hearing in New York City. Thus, the arbitrators are sitting in the Southern District of New York, and the Court has the authority under Section 7 to enforce the summonses.

Respondents urge the Court to adopt a rule that looks to the arbitrators' business addresses to determine where the arbitrators are sitting. The Court rejects respondents' approach. Respondents do not cite any case in which a court looked to the arbitrators' business addresses to determine where the arbitrators are sitting, and the Court knows of none. Moreover, such an approach contradicts Dynergy Midstream Services, in which the Second Circuit assumed the arbitrators were sitting in New York because that was where the arbitration was to occur. 451 F.3d at 90, 96.

Respondents further argue the panel is not permitted to issue nonparty summonses in multiple districts—the panel also summoned a nonparty to appear for a hearing in Philadelphia, and a district court in the Eastern District of Pennsylvania issued an order on October 1, 2018, enforcing that summons. See Bankers Conseco Life Ins. Co. v. Egan-Jones Ratings Co., 2:18-mc-0166-JS (E.D. Pa.).

The Court disagrees.

Respondents rely on Dynergy Midstream Services, in which the Second Circuit reasoned Congress "could well have desired to limit the issuance and enforcement of arbitration subpoenas in order to protect non-parties from having to participate in an arbitration to a greater extent than they would if the dispute had been filed in a court of law." 451 F.3d at 96. In that case, the parties had chosen to arbitrate in New York and therefore the arbitrators could not issue a nonparty subpoena in Texas. Id.

Nothing in Section 7 requires an arbitration panel to sit in only one location. Indeed, such a holding would greatly circumscribe an arbitration panel's ability to decide a case, potentially discourage litigants from arbitrating disputes involving nonparty witnesses in multiple locations, and thus contradict "the strong federal policy in favor of arbitration." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006).

Accordingly, the panel, sitting in New York, was authorized under Section 7 to issue the summonses at issue here.

III. Motion to Quash

Respondents offer several reasons why the Court should quash the summonses, none of which has merit.

First, respondents argue the summonses are defective because they seek impermissible pre-hearing discovery. Section 7 does not authorize arbitrators to issue pre-hearing document subpoenas to nonparty witnesses. Life Receivables Tr. v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 212 (2d Cir. 2008). Nonetheless, "arbitral section 7 authority is not limited to witnesses at merits hearings, but extends to hearings covering a variety of preliminary matters." Id. at 218. Three factors are relevant in deciding whether a summons seeks impermissible pre-hearing discovery: whether (i) the witnesses were ordered to appear for depositions, which occur outside the presence of the arbitrators and allow parties to prepare for the eventual presentation of evidence at the hearing; (ii) the arbitrators heard testimony directly from the witness and ruled on evidentiary issues; and (iii) the testimony became part of the arbitration record, "to be used by the arbitrators in their determination of the dispute before them." Stolt-Nielsen SA v. Celanese AG, 430 F.3d at 578.

The summonses at issue here are proper under Section 7.  The panel summoned respondents to a hearing before the arbitrators—not to a deposition.  The panel's October 15, 2018, order stated the panel was "prepared to receive testimony and documentary evidence from [respondents] . . . and the panel was prepared to rule on evidentiary issues."  (Epstein Decl. Ex. 4 ¶ 6).  And there was a court reporter ready to record the hearing so the hearing "would become part of the arbitration record for the Panel to use in its ultimate determination of this dispute."  (Id. ¶ 7).

Respondents also argue petitioner's willingness to waive the hearing and produce the documents evidences a subterfuge to circumvent the prohibition against pre-hearing discovery.  The Court is not persuaded.  The issue is whether the panel's summonses are enforceable, not whether the terms negotiated by the parties are enforceable.  Moreover, the Court will not prejudice petitioner for its sensible willingness to negotiate with respondents.

Second, respondents argue the district court, not the arbitrator, has the power to rule on the merits of objections to the summonses because Section 7 does not provide a mechanism for nonparties to challenge objectionable summonses.  "Regardless of whether this Court has the authority" to independently assess materiality, the Court "does not have the obligation, or sufficient information, to make that assessment."  Shasha for Violet Shuker Shasha Living Tr. v. Malkin, 2018 WL 3323818, at *2 (S.D.N.Y. July 5, 2018).  In fact, "courts in this Circuit have generally declined to exercise that authority, in most cases deferring evidentiary issues to the arbitrators."  Id. (collecting cases).  "The evidence [the parties] seek may ultimately prove ineffectual on legal or factual grounds. . . .  But it is for the arbitral panel, not the Court, to construe the law [the parties] cite and evaluate the evidence [the parties] adduce."  Id.

(alterations in original) (quoting Bailey Shipping Ltd. v. Am. Bureau of Shipping, 2014 WL 3605606, at *4 (S.D.N.Y. July 18, 2014)).

Even if the Court has authority to rule on the merits of respondents' objections, the Court declines to exercise that authority as to respondents' evidentiary objections. In its October 15, 2018, order, the panel stated the evidence was relevant and that the summonses should be enforced by a court of appropriate jurisdiction. Cf. Bailey Shipping Ltd. v. Am. Bureau of Shipping, 2014 WL 3605606, at *4 ("The panel has concluded that the evidence subject to this subpoena may affect the outcome of its deliberation."). The panel "is far better positioned than this Court to make any assessment of whether the non-parties' testimony is material, cumulative, or otherwise objectionable." Shasha for Violet Shuker Shasha Living Tr. v. Malkin, 2018 WL 3323818, at *2. Thus, the Court will not address the remainder of respondents' arguments— including that the summonses are duplicative, overbroad, burdensome, and seek privileged information; that respondents need not comply with the summonses until they are reimbursed for their prior document production; and that the summonses are defective because they do not provide the arbitrators' addresses.

Finally, respondents argue in their reply brief that petitioner is not entitled to relief because petitioner did not move to compel enforcement of the summonses and did not submit supporting evidence. The plain language of Section 7 contradicts respondents' argument: "if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators." 9 U.S.C. § 7 (emphasis added). Moreover, both parties have submitted declarations with exhibits in support of and opposition to the petition.

13

Accordingly, the Court will not quash the summonses, and, instead, will grant the petition.

**CONCLUSION**

Respondents' motions to quash and for reconsideration or reargument are DENIED.

The petition to enforce the two arbitration summonses is GRANTED.

Respondents must comply with the summonses. Respondents shall appear before the arbitration panel on a date of the panel's choosing and produce all responsive, non-privileged documents, to the extent required by the panel.[2]

The conference scheduled for January 22, 2019, is cancelled.

The Clerk shall terminate the motions (Docs. ##27, 28) and close this case.

Dated: January 18, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[2] The Court leaves to the panel's discretion the issue of expenses for respondents' compliance with the summonses.